This case grew out of the following facts:
In May 1982, Jack Yother, d/b/a Mickey Motors, purchased an automobile policy of insurance from Casualty Indemnity Exchange (CIE), covering Yother's 1979 International Harvester tractor-truck. During the pre-dawn hours of August 1, 1982, while this policy was in full force and effect, the tractor was stolen from the insured's place of business. The tractor was never recovered. It is undisputed that there was a loss, and that it was covered by the aforesaid policy.
Yother submitted proof of loss for the stolen tractor to his insurance agent, claiming a loss of $40,000, the policy limit. In response, he received the following letter:
"Dear Mr. Yother:
 "This is to inform you that Casualty Indemnity Exchange has rejected your Proof of Loss which you submitted to them on September 17, 1982.
 "The reason for the rejection is that they are not in agreement with actual cash value you have placed on the 1979 International Tractor. They consider the tractor to have a value no greater than $35,000.00.
 "Since a dispute has arisen you are entitled to call upon that provision of your policy which provides for arbitration.
 "Please follow the procedure outlined in the provision and direct your correspondence to the writer.
"Yours truly,
"Robert C. Carroll, Adjuster"
The provision of the insurance policy referred to in Carroll's letter states:
 "2. Appraisal. If the insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the insured or the company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The insured and the company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire."
The insured notified CIE by letter that he had elected to invoke the arbitration clause to settle the dispute over the actual cash value of his tractor. The insured and CIE subsequently executed a "Memorandum of Appraisal," in which the insured appointed Elmer Mann as his appraiser, and CIE named Buddy O'Neal as its appraiser.
Mann, a local International Harvester truck and tractor dealer, had sold the insured the 1979 International Harvester tractor-truck. Mann was familiar with both the features and condition of the tractor at the time it was stolen. O'Neal, owner of a truck lot, had never seen the tractor and had no personal knowledge of its condition. After a telephone conversation and a personal meeting, the two men failed to agree on the value of the tractor.
Pursuant to the policy provision, Mann and O'Neal selected and appointed Leon Lucas, an employee of International Harvester Company, as umpire. Prior to submitting the matter to Lucas, however, Mann and O'Neal executed an instrument divided into the following sections: "(1) Declaration of Appraisers"; (2) "Selection of Umpire"; (3) "Qualification of Umpire"; *Page 79 
and (4) "Award." The first three sections relate to acknowledgement by the appraisers and the umpire of their respective duties. The fourth section, entitled "Award," states that the undersigned appraisers and umpire "have appraised and determined and do hereby award as the actual value" of the stolen property, and provides a space for the amount of the award to be inserted. Although the two appraisers were still not in agreement as to the value to be awarded, both signed the form in blank and forwarded it to Lucas. Lucas, without consulting either appraiser or the insured, entered a figure of $36,500 and signed the form, dated December 16, 1982. The insured received notice of the award on January 10, 1983.
The insured appealed from the Award of Arbitration, as provided by § 6-6-15, Code 1975, and asked the circuit court to set it aside. He alleged that the award was void because it was not made in substantial compliance with applicable provisions of the Alabama Code, and because the insured was not given notice of the hearing and was not allowed to present any evidence of the value of the tractor. The award was entered as a judgment in the records of the Circuit Court of Marshall County, pursuant to § 6-6-15, Code.
Following a hearing, the trial court set aside the award, stating in part:
 "(a) That the procedure contemplated in Code Sections 6-6-1 through 6-6-16 was not substantially followed in that no notice of any kind was given to the plaintiff, Jack Yother, and he had no opportunity to present any evidence to any of the arbitrators or appraisers except to the arbitrator or appraiser designated by him.
 "(b) That said statutory scheme referred to in said Code Sections was not otherwise substantially followed.
". . .
 "(d) That the parties hereto did not agree for the dispute between them to be resolved pursuant to said Code Sections."
CIE appeals, and we affirm.
CIE argues that the procedure employed in determining the actual cash value of Yother's tractor was an appraisal, not an arbitration. As such, CIE contends that the trial court, by relying on § 6-6-1, et seq., to vacate the award, erred because those Code provisions do not apply to an "appraisal award" made pursuant to an insurance contract. We agree that an appraisal is distinguishable from arbitration and is not subject to the various procedural requirements imposed upon the arbitration process. But whether the procedures required are those of an arbitration or of an appraisal must be determined from the intent of the disputants or from the character of the questions and issues to be answered, or both. 5 Am.Jur.2d Arbitration andAward, § 3 (1962).
CIE claims that Yother knowingly entered into an appraisal agreement to resolve the dispute over the actual cash value of his tractor, and that neither party intended for that determination to be subjected to the various procedural requirements under the arbitration article of the Code; in support of that agreement, CIE points out that neither the policy provision nor the "Memorandum of Appraisal," signed by the insured, uses the word "arbitration." However, we note that the letter from CIE's adjuster, rejecting the insured's original loss claim, advises him that he is entitled to "call upon that provision of [his] policy which provides for arbitration." And the insured responded that he desired to exercise his right "as per policy agreements of arbitration."
Arbitration and appraisal are generally distinguished in the following manner:
 "A distinction is often drawn between an arbitration and a mere appraisal or valuation, or proceeding in the nature of an appraisal, the fundamental difference between the two proceedings being held to lie in the procedure to be followed and the effect of the findings. In other words, the point is made that appraisers, unlike arbitrators, act without hearing or judicial inquiry upon their own knowledge or information acquired independent of the evidence of witnesses; and that the appraisal ordinarily settles only a subsidiary *Page 80 
or incidental matter rather than the main controversy as does an arbitration award."
6 C.J.S. Arbitration, § 3 (1975).
 "An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action before the court. Furthermore, appraisers are generally expected to act on their own skill and knowledge; they may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached; and they are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue."
5 Am.Jur.2d Arbitration and Award, § 3 (1962).
Conceding, as CIE argues, that the two proceedings are different, we hold that the trial court did not err in setting aside the award in this case, whether it is labeled arbitration or appraisal.
First, because the insured was given no notice of the hearing, he was denied the opportunity to offer testimony or other evidence of the condition and value of his tractor at the time of loss. He testified that he requested, on two separate occasions, that he be permitted to appear before the hearing. The insured stated that he made one request to Mann, his appraiser, and another request to his insurance agent, Gerald Martin. He further testified that Martin told him that his request would be forwarded to CIE. This evidence was not challenged. The fact that neither the policy provision nor the agreement expressly provides for notice to the parties is not determinative.
 "It has been held that even though neither the insurance policy nor the arbitration or appraisal agreement provides for it, notice to the parties of a hearing before the appraisers or arbitrators appointed to determine the amount of a loss under the policy is nevertheless necessary when one of the parties manifests a desire to be heard."
Annot., 25 A.L.R.3d 711 (1969).
Secondly, a hearing was never conducted. It is undisputed that the two appraisers signed a blank award form without having agreed upon a value for the tractor-truck, and that Lucas, the umpire, entered the amount of the award without having consulted the appraisers or having received evidence from the insured as to the tractor's condition. Thus, the policy provision was not complied with. It requires concurrences of two of the three, i.e., the two appraisers and the umpire, and it is not controverted that Lucas alone made the award without notice to the insured, without a hearing, and without any evidence. Mann's testimony in this regard was undisputed:
 "Q. Did you sign each of these documents on the same day?
"A. The two of us, yes.
"Q. And Mr. O'Neal signed on the same day?
"A. Yes.
 "Q. Now, the bottom document says in part: We hereby certify that we have truly and conscientiously performed, et cetera, and do hereby award as the actual cash value of the property on the 16th day of December, 1982, the amount of the loss thereto by . . . blank . . . on that day . . . the following sum, to-wit: actual cash value $36,500. Was that figure, $36,500, in this document when you signed it?
"A. No.
 "Q. Was it in this document when Mr. O'Neal signed it?
"A. No.
 "Q. Did you agree that $36,500 was the actual cash value of Mr. Yother's truck?
"A. No. *Page 81 
"Q. Why did you sign the bottom document?
 "A. Well, the idea I had and that Mr. O'Neal had on arbitration, we thought that if he and I couldn't agree . . . if we picked a third party, we were bound by his appraisal.
"Q. And you all couldn't agree?
"A. No.
In Dufresne v. Marine Ins. Co., 157 Minn. 390, 196 N.W. 560,562 (1923), a case involving facts similar to those of the present case, the Supreme Court of Minnesota stated:
 "[S]ince the universal idea of a proper determination of a controverted matter between man and man rests upon a fair hearing of both sides, it would seem to follow that an arbitration without such hearing should not be upheld, unless it satisfactorily is made to appear either that a hearing was not contemplated or else that it was waived. The court expressly found that plaintiff did not waive notice of the hearing, and that he expected and intended to be present and give evidence, but was prevented from attending and presenting his evidence because of lack of notice and knowledge of the meeting of the appraisers. The finding is sustained, we think. The claim cannot be successfully maintained that this is a case where no hearing was contemplated either because of the character of the subject to be appraised or because of the expert qualifications of the appraisers selected. Two of the appraisers had never seen the automobile. It could not be produced. They could therefore act only upon information obtained from others. And naturally, in such a case, the owner who has sustained the loss should have an opportunity to adduce evidence as to the value and qualities of the article."
It is fundamental that one is entitled to notice and an opportunity to be heard where property rights are affected. The insured asserted that right, and it was denied. CIE argues only that the policy provision is silent with respect to notice and, because it is, that the insured was entitled to none. We cannot agree, where the evidence is undisputed that he demanded notice and an opportunity to produce evidence. The foregoing statement by the Minnesota court is applicable under the facts of this case, whether it is considered a hearing held by "appraisers" or an arbitration hearing.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.