Becky Ann JOHNSON, Appellant

v.

STATE FARM LLOYDS, Appellee.

No. 05–05–00640–CV.

Court of Appeals of Texas, Dallas.

Oct. 27, 2006.

Russell J. Bowman, Scott, Bowman & Stella, Dallas, for Appellant.

Julia Dobbins, John Christopher Nickelson, Shannon, Gracey, Ratliff & Miller, L.L.P., Fort Worth, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

We deny State Farm Lloyds' motion for rehearing. On our own motion, we withdraw our opinion of July 25, 2006 and vacate our judgment of that date. This is now the opinion of the Court.

This case involves the determination of whether the meaning of the term "amount of loss" in an appraisal clause of a homeowner's insurance policy includes the *extent* of loss and whether the insured can compel the insurer to appraisal when there is a dispute about the *extent* of loss.

This dispute arose after the roof of Becky Ann Johnson's home was damaged by hail in April 2003. State Farm Lloyds inspected the property and concluded that only the ridgeline of Johnson's roof was damaged by hail. State Farm estimated repairs at $499.50, which was less than Johnson's deductible, and declined any payment on the claim. At Johnson's request, State Farm conducted a second inspection. The result was the same. Johnson argued the entire roof needed to be replaced and submitted an estimate for the repairs of over $6,400. She also hired an attorney who wrote State Farm demanding it submit to the appraisal process pursuant to the policy's appraisal clause. State Farm declined, stating that the parties' disagreement about the extent of the hail damage was a coverage issue that could not be decided by appraisal.

Johnson filed a declaratory judgment action seeking to compel State Farm to submit to an appraisal pursuant to the policy State Farm issued to her. Both

parties moved for summary judgment.[1] The trial court agreed with State Farm, granted its motion for summary judgment, and denied Johnson's motion.

We conclude the dispute between Johnson and State Farm concerns the amount of loss and that the appraisal clause applies. We further conclude the trial court erred by granting summary judgment in favor of State Farm. Accordingly, we reverse the trial court's order granting summary judgment in favor of State Farm and denying Johnson's motion. We render judgment granting Johnson's motion. We remand the issue of Johnson's request for attorney's fees.

### STANDARDS OF REVIEW

#### A. Summary Judgment

We review the trial court's summary judgment de novo. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). When both parties move for summary judgment, each bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. *Holmes v. Morales*, 924

S.W.2d 920, 922 (Tex.1996). We review the summary judgment evidence presented by both parties and determine all questions presented. *Dallas Morning News*, 22 S.W.3d at 356. We may affirm the trial court's summary judgment or reverse and render the judgment the trial court should have rendered. *Morales*, 924 S.W.2d at 922; *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

#### B. Contract Terms

We review a trial court's interpretation of a contract de novo. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *First Trust Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230, 233–34 (Tex.App.-Dallas 2005, pet. denied). When interpreting the terms of an insurance contract, we follow the general rules of contract construction. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). Our primary concern is to ascertain the true intent of the parties as expressed in the written contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 866 (Tex.App.-Dallas 2003, pet. denied). If the contract can be given an exact or certain legal interpretation, we must interpret the insurance policy's meaning and intent from its four corners. *Houston Lighting & Power Co. v. Tenn–Tex Alloy & Chem. Corp.*, 400 S.W.2d 296, 300 (Tex.1966); *La. Nat'l Gas Pipeline, Inc. v. Bludworth Bond Shipyard, Inc.*,

---

1. Johnson's motion is titled "Motion to Compel Appraisal." However, in the body of the motion, Johnson stated, "Plaintiff, Becky Ann Johnson, files this Motion for Summary Judgment ... seeking summary judgment that [State Farm] be compelled to submit to appraisal as required by State Farm's insurance contract...." We construe Johnson's motion to compel as a motion for summary judgment. *See* Tex.R. Civ. P. 71 (misnomer of

pleading does not render it ineffective, and court will treat pleading as if properly named). Additionally, we look to the substance of a pleading to determine its nature, not merely the title given to it. *See State Bar v. Heard*, 603 S.W.2d 829, 833 (Tex.1980); *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 604 (Tex.App.-Tyler 2005, pet. denied).

875 S.W.2d 458, 461 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 716 (Tex.App.-Houston [14th Dist.] 1987, no writ).

### C. Compelling Appraisal

■ Parties may be compelled to appraisal where they fail to agree on the amount of loss of a covered claim. *Standard Fire Ins. v. Fraiman*, 514 S.W.2d 343, 344–46 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ).

### ANALYSIS

■ Both parties agree that appraisal can be compelled but disagree that it can be compelled in this case. As a result, the issue we decide is whether the dispute in this case, the extent of loss from hail damage, is subject to appraisal as provided in the policy.

### A. Policy Terms

At issue is how the following appraisal clause in the homeowner's insurance policy that State Farm issued to Johnson is interpreted and applied:

**SECTION I—CONDITIONS**

\* \* \*

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

### B. Johnson's Contention

Johnson contends this appraisal clause requires State Farm to submit to the appraisal process because their dispute concerns the amount of loss sustained as a result of hail damage, not whether the hail damage was covered by the policy. Johnson argues that "the amount of loss" includes a dispute over the extent of the damage as well as a determination of what it will cost to fix the damage.

### C. State Farm's Contention

State Farm argues that it does not have to submit to the appraisal process unless the parties first agree on causation, coverage, and liability. It contends it is not required to submit to an appraisal in this case because whether the hail damaged only the ridgeline of the roof, as State Farm contends, or the entire roof, as Johnson contends, is a causation, coverage, and liability issue not an issue concerning

the amount of loss.[2] It argues that deciding the extent of the loss involves decisions about causation, coverage, and liability that cannot be made pursuant to the appraisal clause. According to State Farm's interpretation of the appraisal clause, Johnson and State Farm must first agree on which specific shingles were damaged and then, only if there is a dispute over the cost to repair those specific shingles, Johnson may compel State Farm to submit to an appraisal.[3] It further contends that appraisal would only be appropriate if Johnson disputed State Farm's estimate for the repair of the ridgeline of the roof. Because Johnson disputed the extent of the loss, not the estimate for repair of the ridgeline, State Farm contends that the dispute is about coverage and she has not shown she is entitled to appraisal. In summary, State Farm argues "amount of loss" cannot be interpreted to include the *extent* of loss.

## D. Discussion

State Farm argues that *any* decisions by appraisers on the extent of damage would be beyond the scope of their authority because their decisions necessarily will involve decisions about causation, coverage, and liability. It cites this Court's opinion in *Wells v. American States Preferred Insurance Co.*, 919 S.W.2d 679 (Tex. App.-Dallas 1996, writ denied) to support its argument that determination of the extent of the damage is a coverage issue. In *Wells,* the insureds' home was damaged by foundation movement. Foundation movement caused by a plumbing leak was covered under the policy but foundation movement that was not caused by a plumbing leak was not. A structural engineer hired by the insureds inspected the foundation and determined the movement was caused by a plumbing leak. The insurance adjuster also inspected the foundation and reported that a plumbing leak did not cause the damage. The insurer denied the claim and sued to require an appraisal under an appraisal clause similar to the one in this case. The appraisers determined the cost to repair the foundation was $22,875.94. However, one appraiser and the umpire also apportioned this cost among various causes and concluded that none of the foundation damage was caused by a plumbing leak. Based on this information, the trial court granted a take-nothing summary judgment in favor of the insurer. On appeal, we reversed, stating that the plain language of the appraisal clause did not authorize or empower the appraisers to determine what caused or did not cause the claimed loss. *Id.* at 683. This court stated "[t]he issues focus upon the question of whether the appraisers are authorized and empowered to determine what

2. The record does not reveal whether State Farm concedes that the entire roof needs repair but that only part of the damage was caused by hail or if the parties simply disagree about the extent of the hail damage.

3. State Farm also argues that, even though "amount of loss" is not defined in the policy, the meaning can be gleaned from a review of the entire policy. State Farm defines "loss" as "direct physical damage to covered property which is caused by a covered peril." It also states, "the appraisal clause exists only to resolve disputes about the dollar amount of

the property damage where the parties agree about coverage, causation, and liability for the damage." But it is undisputed that there was direct physical damage to Johnson's roof caused by a covered peril, hail. State Farm's *suggested interpretation does not provide more clarity because the only issues here are how much of the roof was damaged, what "amount of" means, and whether the extent of the damages is a coverage, causation, or liability issue, and those terms are not defined.

caused or did not cause the loss claimed." We held that "the trial court erred in finding that [the insurer] is entitled to a declaratory summary judgment maturing the appraisal award in the present case and entering a take-nothing summary judgment against the [insureds] based on that determination." *Id.* at 685.

We also explained the difference between arbitration and appraisal, noting that appraisers do not have the power to decide the cause of loss but only the value of the loss, "the function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." *Id.* In holding that the appraisers are to determine the amount of damage *Wells* did not limit the appraisers' authority in this type of case to a determination of the cost to repair each shingle they agreed was damaged by a covered peril. Instead, we held they are to determine the "amount of damage resulting to the property submitted for their consideration." *Id.*

The principle in *Wells* was that the appraisers have certain powers and that, acting within those powers, their determination "can estop one party ... from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Id.* Actions beyond those powers are not given estoppel effect.

Significantly, in *Wells* the parties apparently agreed on the extent of the loss and the cost of repairs; they disagreed on whether there was a covered loss at all.[4] And the *Wells* appraisal was used to determine whether the damage was caused by a covered peril as opposed to determining the amount of damage resulting to the property from a covered peril. Unlike *Wells*, these parties agree there was a covered loss but disagree on the extent of the loss and the cost of repairs. Consequently, we conclude that *Wells* is distinguishable and did not decide the issue presented in this case.

Similar issues were considered in *Lundstrom v. United Services Automobile Association–CIC*, 192 S.W.3d 78 (Tex.App.-Houston [14th Dist.] 2006, pet. filed). The insureds' home was damaged by multiple water leaks. The insurer agreed to cover the losses caused by the initial water leak and asked appraisers to determine the amount of that loss. *Id.* at 89. In doing so, the appraisers had to determine which damages were caused by the initial water leak and distinguish those damages from damages that occurred later. *Id.* The court concluded the appraisers were not deciding a causation issue, but were deciding an issue concerning the amount of loss. *See id.* That court noted that *Wells* and cases cited therein stand for the narrow proposition that appraisers exceed their authority when they make legal determinations of what is or is not a covered loss based on their determination of what

---

4. State Farm also relies on *Holt v. State Farm Lloyds*, No. 3:98–CV–1076–R, 1999 WL 261923 (N.D.Tex. Apr. 21, 1999) (not designated for publication) for the proposition that an appraiser exceeds his authority if the appraisal "touched on issues of causation." *Holt* is similar to *Wells*. In *Holt*, the insurer agreed the property was damaged by wind but disagreed it was also damaged by hail.

As a result, the parties disagreed about whether there had been hail damage at all. The parties submitted the claim to an appraisal, and one appraiser and the umpire determined the damage had not been caused by hail. The district court concluded the appraisers exceeded the scope of their authority in determining the cause of the damage. 1999 WL 261923 at *3.

caused the loss or some portion of it. We agree that *Wells* limits appraisers' authority but that it does not prevent appraisers from making decisions about the extent of damage.

Our view is reinforced by a recent Texas Supreme Court decision that discussed the distinction between an arbitration and an appraisal for purposes of a personal automobile insurance policy and stated that an "appraisal merely 'binds the parties to have the *extent* or amount of the loss determined in a particular way.'" *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex.2002) (quoting *Scottish Union & Nat'l Ins. Co. v, Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888)) (emphasis added).

If the parties had to first agree on which specific shingles were damaged and approach every disagreement on extent of damage as a causation, coverage or liability issue, either party could defeat the other party's request for an appraisal by labeling a disagreement as a coverage dispute. Instead, as the process is designed, once it is determined that there is a covered loss and a dispute about the amount of that loss, the appraisal process determines the amount that should be paid because of loss from a covered peril.

We conclude that if the parties agree there is coverage but disagree on the extent of damage, the dispute concerns the "amount of loss" and that issue is determined in accordance with the appraisal clause. Because the parties here agree that covered property sustained damage from a covered peril but fail to agree on the amount of loss, the appraisal clause applies. Under these circumstances, Johnson was entitled to appraisal.

### Conclusion

We conclude this dispute between Johnson and State Farm over the extent of the damage to the roof from hail is a dispute concerning the amount of loss. As a result, Johnson can compel State Farm to submit to the appraisal process under the policy's appraisal clause. *Fraiman*, 514 S.W.2d at 346 (insured has right to rely on plain language of policy providing for appraisal upon written demand by either party). The trial court erred by granting State Farm's motion for summary judgment and denying Johnson's motion. Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of State Farm and render judgment granting Johnson's motion to compel State Farm to submit to the appraisal process. We remand the issue of Johnson's attorney's fees to the trial court for consideration.