984 So.2d 382 (2007)
Charles B. ROGERS and Lori Heath Rogers
v.
STATE FARM FIRE AND CASUALTY COMPANY.
1051458.
Supreme Court of Alabama.
October 12, 2007.
*383 J. Michael Campbell, Birmingham, for appellants.
V. Edward Freeman II of Stone, Patton, Kierce & Freeman, Bessemer, for appellee.
COBB, Chief Justice.[1]
Charles B. Rogers and Lori Heath Rogers appeal from a judgment of the Jefferson Circuit Court assessing damages against State Farm Fire and Casualty Company (hereinafter referred to as "State Farm") for storm damage to the Rogerses' residence. We reverse and remand.

I. Facts and Procedural Background
The Rogerses' residence was damaged as a result of a powerful tornado that swept through western Jefferson County on April 8, 1998. State Farm insured the Rogerses' residence, and the Rogerses made a claim against their State Farm homeowner's policy for the damage sustained as a result of the tornado; the Rogerses' claim asserted that the house was a total loss. State Farm disputed the Rogerses' claim that their house was a total loss and employed Joel D. Wehrman, a subcontractor engineer with Jade Engineering and Inspection, Inc., to assess the damage to the Rogerses' house. Wehrman concluded that the damage to the *384 brick veneer and the foundation was the result of settlement and not the storm; therefore that damage was not covered by the Rogerses' homeowner's policy with State Farm. The Rogerses hired their own engineer, Homer Montague, who concluded that the damage to the brick veneer and foundation was a result of stress placed on the house by the storm.
On June 3, 1998, State Farm sent the Rogerses a letter directing their attention to the appraisal-condition provision in the homeowner's policy. According to the letter, that provision states:
"Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to an umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and compensation of the umpire shall be paid equally by you and us."
(Emphasis added.) The Rogerses did not respond to this letter, and on June 28, 1998, State Farm sent another letter, noting the Rogerses' failure to respond, accompanied by a check to cover living expenses and the property damage State Farm agreed had been caused by the storm. The Rogerses did not negotiate the check; their attorney instead sent a letter dated July 2, 1998, informing State Farm that the Rogerses declined to initiate the appraisal proceedings and stating that they claimed the limits of their policy, $60,911 with interest, to cover the total loss to their house. In a letter sent on July 21, 1998, State Farm again contested the Rogerses' claim that their house was a total loss and again suggested that the Rogerses seek a "non-binding" appraisal from a third party.
On January 26, 1999, the Rogerses sued State Farm in the Jefferson Circuit Court, alleging claims of breach of contract and bad-faith refusal to pay. On April 4, 2000, over a year and two months after the action was filed, State Farm sent the Rogerses a letter "requesting that the dispute be resolved in accordance with the terms of the contract." On June 22, 2000, State Farm filed with the trial court a motion for a partial summary judgment as to the Rogerses' bad-faith claim.[2] On July 13, 2000, State Farm filed a motion for the appointment of an appraiser and/or an umpire. On July 21, 2000, the trial court denied the motion on the ground that State Farm had waived the right to invoke the appraisal process under the homeowner's policy.
State Farm filed a motion to set aside the order denying its motion for the appointment of an appraiser and requested a hearing on the matter. The trial court held a hearing on March 7, 2002, to determine whether an appraisal should be ordered, *385 at which point State Farm conceded that if the appraisal resulted in a finding that the damage to the brick veneer and the foundation were the result of the tornado, then State Farm would declare the house a total loss under the policy. The trial court, on May 7, 2002, set aside its July 21, 2000, order sua sponte and held that State Farm had not waived its right to invoke the appraisal process.
The Rogerses appealed that order to the Court of Civil Appeals, and the Court of Civil Appeals transferred the appeal to this Court. We dismissed the appeal, and the trial court began the appraisal process. The Rogerses amended their complaint on January 16, 2004, maintaining their initial claims of breach of contract and bad faith as set forth in the original complaint and adding new claims of breach of contract and bad faith in the context of State Farm's refusal to invoke the appraisal clause in a timely manner. The two appraisers were unable to agree on an umpire; consequently, the trial court appointed an umpire. The trial court then entered an order on May 26, 2006, in favor of the Rogerses and against State Farm, based on the umpire's findings that the Rogerses were due $16,595.38 from State Farm. The court deducted from that amount $1,642.50, representing one-half the cost of the umpire's charges, making the total award of damages to the Rogerses $14,952.88.
On July 5, 2006, the trial court entered a final order on the case-action summary. That order stated: "This Court's Order of the 26th day of May 2006 adjudicates all of the issues and is therefore a final order." On July 11, 2006, in response to a motion by State Farm requesting that the final order be set aside, the trial court entered an order on the case-action-summary sheet that stated: "The order of [July 5, 2006,] applies only to the finality of the right to demand . . . the appraisal process and the findings of that process." The Rogerses appealed to this Court.
On December 20, 2006, we remanded this case for the trial court to make its order of July 5, 2006, a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; to adjudicate the remaining claims, thus making the interlocutory order final; or to take no action, in which event the appeal would be dismissed. On remand, the trial court entered an order on the case-action-summary sheet on January 2, 2007, certifying the judgment in favor of the Rogerses as final, pursuant to Rule 54(b). That order states: "The Court in accordance with the Supreme Court finds that the order of July 5, 2006, is a final judgment pursuant to the provisions of Rule 54(b) and as such the interlocutory order of July 5th 2006 is final." This Court has held that when the trial court specifically cites Rule 54(b) as the ground upon which it makes a summary judgment final, the trial court implicitly incorporates the language of Rule 54(b) into its order. Schneider Nat'l Carriers, Inc. v. Tinney, 776 So.2d 753, 755 (Ala.2000). Because the trial court certified its judgment as final in response to our remand order, we now consider the Rogerses' arguments on the merits.

II. Standard of Review
As this Court stated in Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999):
"When a trial judge's ruling is not based substantially on testimony presented live to the trial judge, review of factual issues is de novo. Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala.1999). `[W]here the trial court's ruling rests upon a construction of facts indisputably established, this Court indulges no presumption of correctness in favor of the lower *386 court's ruling.' Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So.2d 921, 923-24 (Ala.1984). See also, Beavers v. Walker County, 645 So.2d 1365, 1372 (Ala.1994) (`[W]here the facts are not disputed the ore tenus standard does not apply.'). `"[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts."' Harris v. McKenzie, 703 So.2d 309, 313 (Ala. 1997) (quoting Craig Constr. Co., Inc. v. Hendrix, 568 So.2d 752, 756 (Ala.1990)). The ore tenus `standard's presumption of correctness has no application to a trial court's conclusion on questions of law.' Beavers, 645 So.2d at 1372. `[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.' Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997)."
The trial court did not base its ruling allowing State Farm to invoke the appraisal clause on live testimony; rather, the court relied on pleadings, depositions, interrogatories, and exhibits, and the facts regarding the invocation of the appraisal clause are undisputed. Therefore, we review the trial court's application of law to the undisputed facts de novo.

III. Analysis

A. Waiver of the Right to Invoke the Appraisal Clause
The Rogerses argue that State Farm waived its right to invoke the appraisal process by waiting until over 14 months after litigation had commenced, and almost 2 years after the tornado occurred, to demand invocation of the appraisal clause. Although this Court has never ruled on what standard should be applied to determine whether there has been a waiver of the right to invoke an appraisal clause in an insurance policy, the former Court of Appeals previously indicated that the same standard applies to both appraisal and arbitration clauses. See Chambers v. Home Ins. Co. of New York, 29 Ala.App. 34, 37, 191 So. 642, 644 (1939) ("[A] denial of liability by an insurer on a policy of insurance, issued by the insurer, amounts to a waiver of an arbitration, or appraisal, clause incorporated in said policy.").
Courts in other jurisdictions, both state and federal, have applied the same standard for determining whether there has been a waiver of the right to invoke an appraisal clause as they have applied to determining whether there has been a waiver of the right to invoke an arbitration clause. See, e.g., J. Wise Smith & Assocs. v. Nationwide Mut. Ins. Co., 925 F.Supp. 528, 532 (W.D.Tenn.1995) (finding that the defendant waived its right to invoke the appraisal clause because it "was aware of the appraisal clause and could have sought to invoke it well before it did, avoiding unnecessary delay and expense for both parties"); Lundy v. Farmers Group, Inc., 322 Ill.App.3d 214, 219-20, 750 N.E.2d 314, 319, 255 Ill.Dec. 733, 738 (2001) ("Our research has not revealed any Illinois case that addresses waiver of an appraisal clause. Courts from other jurisdictions, however, have held that, like an arbitration clause, an appraisal clause may be waived. . . . [W]e conclude that these principles apply to appraisal clauses as well as arbitration clauses."); Meineke v. Twin City Fire Ins. Co., 181 Ariz. 576, 580, 892 P.2d 1365, 1369 (Ariz.Ct.App.1994) (holding that because "appraisal is analogous to arbitration" the court would "apply principles of arbitration law to this dispute regarding an insurance policy appraisal clause") (citing Aetna Cas. & Sur. Co. v. Insurance Comm'r, 293 Md. 409, 445 A.2d 14, 20 (1982); Hanson v. Commercial Union *387 Ins. Co., 150 Ariz. 283, 285, 723 P.2d 101, 103 (Ariz.Ct.App.1986); Hirt v. Hervey, 118 Ariz. 543, 545, 578 P.2d 624, 626 (Ariz.Ct.App.1978)). See also 15 Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 210.42 (3d ed.1999) (treating identically the standard for waiver of an arbitration provision and an appraisal provision). We find this authority persuasive in our consideration of the standard for determining whether there has been a waiver of an appraisal clause, and we apply the standard for determining whether there has been a waiver of an arbitration clause to the facts before us.
In Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995), this Court stated with regard to the waiver of the right to invoke an arbitration clause:
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case. See Huntsville Golf Development, Inc. v. Aetna Casualty & Surety Co., 632 So.2d 459 (Ala.1994); Ex parte McKinney, 515 So.2d 693 n. 2 (Ala. 1987); Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala. 1986); Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), overruled on other grounds, Ex parte Jones, 628 So.2d 316 (Ala.1994). In accord, see S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507 (11th Cir. 1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991)."
(Emphasis added.) See also Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala.2006).
For purposes of determining whether the Rogerses have been prejudiced, we assume, without deciding, that State Farm has substantially invoked the litigation process. Regarding the standard for determining prejudice, we have stated:
"`Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver.' Price [v. Drexel Burnham Lambert, Inc.], 791 F.2d [1156,] 1162 [(5th Cir.1986)] (footnote omitted). `Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice.' Frye [v. Paine, Webber, Jackson & Curtis, Inc.], 877 F.2d [396,] 399 [ (5th Cir.1989) ].
"`Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.' Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995). `Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration.' Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968). . . . "
*388 Hales v. ProEquities, Inc., 885 So.2d 100, 105-06 (Ala.2003). As Justice See noted in his dissent in Hales:
"`A party seeking to prove waiver of a right to arbitrate must demonstrate . . . prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof.'"
885 So.2d at 110 (See, J., dissenting) (quoting Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir.1990)).
The Rogerses claim to have expended substantial sums in the litigation between the date of filing and the date State Farm invoked the appraisal clause. However, in their original complaint, the Rogerses elected to pair their breach-of-contract claim with a claim of bad-faith refusal to pay, which would have necessitated that the Rogerses incur expenses, regardless of whether State Farm invoked the appraisal clause. State Farm did not file its motion for a partial summary judgment on the bad-faith claim in the original complaint until June 2000, almost 18 months after the commencement of the action, and State Farm argued in the motion that it was entitled to a partial summary judgment because it had already tendered a check for some of the Rogerses' loss  a defense that perhaps was available at the onset of the litigation and therefore would not have required 18 months of discovery. However, the Rogerses have not allocated these expenses between their breach-of-contract claim and their bad-faith-refusal-to-pay claim, and we are in no position to undertake that task for them. Therefore, we cannot conclude that the Rogerses have carried their heavy burden of showing substantial prejudice from State Farm's delayed invocation of the appraisal clause. Thus, State Farm did not waive its right to invoke the appraisal clause.

B. Improper Adjudication of Coverage and Causation
The Rogerses argue, in the alternative, that, if this Court holds that State Farm did not waive its right to invoke the appraisal clause, State Farm improperly adjudicated issues of coverage and causation in the appraisal process. The Rogerses cite a treatise and Alabama caselaw for the proposition that an appraisal pursuant to an insurance contract sets only the amount of loss; it does not resolve issues of causation or coverage. Specifically, they refer to 15 Couch on Insurance § 210.42 ("As a general rule, the sole purpose of an appraisal is to determine the amount of damage. As a consequence, an appraisal clause does not permit appraisers to determine whether the loss was, in fact, total.") and Casualty Indemnity Exchange v. Yother, 439 So.2d 77, 79-80 (Ala.1983).
In Yother, this Court distinguished arbitration clauses from appraisal clauses in a situation in which the insured contended that it was entitled to the procedural protections applicable to arbitration as set forth in § 6-6-1. The insurer contended that it was subject to the law applicable to appraisals and not § 6-6-1. At issue in Yother was the value of a stolen tractor. The Court, quoting Corpus Juris Secundum and American Jurisprudence, noted typical differences between arbitration and appraisal  arbitration settles an entire controversy, whereas an appraisal resolves a subsidiary issue, such as the valuation of loss. This Court observed:
"`An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a *389 plenary action before the court. Furthermore, appraisers are generally expected to act on their own skill and knowledge; they may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached; and they are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue.'"
439 So.2d at 80 (quoting 5 Am.Jur.2d Arbitration and Award § 3 (1962)). However, the Court in Yother found it unnecessary to determine whether the valuation at issue there was the result of an arbitration or an appraisal, because it disposed of the case on the basis of applicable due-process considerations independent of § 6-6-1, Ala.Code 1975. This Court's distinguishing of arbitration and appraisal in Yother is consistent with other jurisdictions. See Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 150 (Tenn.Ct.App. 2001) ("Insurance appraisals are generally distinguished from arbitrations. . . . [A]n arbitration agreement may encompass the entire controversy between parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy."), and Smithson v. United States Fid. & Guar. Co., 186 W.Va. 195, 202, 411 S.E.2d 850, 857 (1991) ("The narrow purpose of an appraisal and the lack of an evidentiary hearing make it a much different procedure from arbitration.").
This Court is faced here with a question of first impression: What are the duties and powers of an appraiser when he or she "set[s] the amount of the loss" under an appraisal clause contained in a homeowner's insurance policy? As has been noted, "[t]he question is far from an easy one, and no clear answer is presented by the authorities." Wausau Ins. Co. v. Herbert Halperin Distribution Corp., 664 F.Supp. 987, 988 (D.Md.1987). A Texas Court of Appeals faced with a similar situation noted as follows regarding holdings from other jurisdictions:
"We have considered the holdings of other jurisdictions interpreting appraisal provisions containing substantially similar language to that contained in the policy at issue in this case in concluding that appraisers have no power to determine the cause of the damage[ ]. Their power is limited to the function of determining the money value of the property damage. Munn v. National Fire Ins. Co. of Hartford, 237 Miss. 641, 115 So.2d 54, 55, 58 (1959) ('The chancellor should have judicially determined what force caused the walls to lean and twist[;][t]hat was not a question for the appraisers to decide. If that damage was the result of the storm, then the appraisers should have been directed to estimate the value of the loss occasioned by the walls being damaged.'); see also Jefferson Ins. Co. of N.Y. v. Superior Court, 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880, 883 (1970) (the function of the appraisers is to determine the amount of damage resulting to various items submitted for their consideration, and not to resolve questions of coverage and interpret provisions of the policy, which exceed the scope of their powers); Appalachian Ins. Co. v. Rivcom Corp., 130 Cal.App.3d 818, 182 Cal.Rptr. 11, 16 (Ct.App.2d Dist.1982) (the appraisal clause provides the device to be utilized to determine the amount of loss if the parties cannot agree on the amount; once the amount of the loss has been fixed, whether by agreement between *390 insurer and insured or by appraisal procedure, if the insurer refuses to pay such amount, the insured is not without jury trial rights); Lewis Food Co. v. Fireman's Fund Ins. Co., 207 Cal. App.2d 515, 24 Cal.Rptr. 557, 561 (Ct. App.2d Dist.1962) (the appraisers' function under the policy is to determine the amount of damage resulting to various items submitted for their consideration; it is certainly not their function to resolve questions of coverage and interpret provisions of the policy); Oakes v. Franklin Fire Ins. Co., 122 Me. 361, 120 A. 53, 54 (1923) (the right of the insured to recover the loss is not submitted to the referees, only the amount of the damages); Wausau Ins. Co. v. Herbert Halperin Dist. Corp., 664 F.Supp. 987, 989 (D.Md.1987) (where insurer does not factually dispute the consequences of the occurrence, but contests the issue of legal 'causation' on the basis that the policy exclusions apply so as to limit the scope of coverage, the issue is one of contract interpretation, and is within the competence of the court, not an appraiser, to resolve); Hogadone v. Grange Mut. Fire Ins. Co., 133 Mich. 339, 94 N.W. 1045, 1047 (1903) (the policy provision relates only to cases of disagreement as to the amount of valuation, in whole or in part, and not whether the claim itself is valid); Denton v. Farmers' Mut. Fire Ins. Co., 120 Mich. 690, 79 N.W. 929, 930 (1899) (the sections of the charter do not give board of auditors the power to pass upon questions of liability, but contemplate a valid loss, and confer upon the auditors only the power to fix the amount); St. Paul Fire & Marine Ins. Co. v. Wright, 97 Nev. 308, 629 P.2d 1202, 1203 (1981) (contrary to arbitration, where the arbitrator is frequently given broad powers, appraisers generally have more limited powers; an appraiser's power generally does not encompass the disposition of the entire controversy between the parties, but extends merely to the resolution of the specific issues of actual cash value and the amount of loss); In re Delmar Box Co., 309 N.Y. 60, 127 N.E.2d 808, 811 (1955) (agreement for appraisal extends merely to the resolution of specific losses of actual cash value and the amount of loss, with all other issues being reserved for determination in a plenary action); United Boat Serv. Corp. v. Fulton Fire Ins. Co., 137 N.Y.S.2d 670, 671 (Sup.Ct.1955) (where appraisers made a determination of a question of liability, they exceeded the powers conferred upon them, and summary judgment is improper); Kentner v. Gulf Ins. Co., 66 Or.App. 15, 673 P.2d 1354, 1356 (1983) (statutory policy language establishes an appraisal procedure to determine the amount of the insured's loss; the procedure does not apply to the determination of the insurer's responsibility)."
Wells v. American States Preferred Ins. Co., 919 S.W.2d 679, 684-85 (Tex.App. 1996). In Wells, the insureds' house sustained damage as a result of foundation movement. The insured contended that the foundation movement was caused by a plumbing leak, which was covered under the policy; the insurer contended that the foundation movement was not caused by a plumbing leak and was thus not covered under the policy. After determining that the parties disagreed as to the cause of the foundation movement, the insurer demanded an appraisal under the appraisal clause of the insurance policy, which is similar to the appraisal clause contained in the Rogerses' policy. The appraisers determined the cost to repair the foundation; one appraiser and the umpire, however, apportioned the cost to various causes and concluded that none of the foundation damage was caused by a plumbing leak. The trial *391 court entered a summary judgment in favor of the insurer based on the information garnered from the appraisal. The appeals court reversed the summary judgment, stating:
"We conclude that the authority of the appraisal panel in the present case was limited to determining only the amount of loss. Therefore, we conclude further that the appraisal section of the policy, as a matter of law, did not authorize and empower the appraisal panel to determine that the plumbing leak did not cause the loss to the Wellses' property. It follows, and we so hold, that the appraisal section of the [insurance policy] . . . establishes an appraisal procedure to determine the dollar amount of the insured's loss only, and that it does not authorize or empower the appraisal panel created thereunder to determine what caused or did not cause that loss. Indeed, we hold that, absent an agreement to the contrary, questions of what caused or did not cause the loss are questions to be decided by the court. Moreover, we hold that participation by the insured in the appraisal process does not constitute agreement by the insured to authorize and empower the appraisal panel to determine questions of what caused or did not cause the loss."
919 S.W.2d at 685.
It should be noted that the Texas Court of Appeals in Johnson v. State Farm Lloyds, 204 S.W.3d 897 (Tex.App.2006), recently limited the holding in Wells. In Johnson, an insured filed a claim alleging that her roof had been damaged by hail. State Farm Lloyds inspected the roof and concluded that only the ridgeline of the roof was damaged by hail. The insured, however, argued that the entire roof needed to be replaced. The insured demanded the invocation of the appraisal clause of the policy, but State Farm Lloyds declined to submit to an appraisal.[3] The insured filed a declaratory-judgment action, and both parties moved for a summary judgment. The trial court entered a summary judgment in favor of State Farm, holding that an issue of causation existed that precluded the use of the appraisal process. The Texas Court of Appeals reversed the judgment of the trial court, holding that "if the parties agree there is coverage but disagree on the extent of the damage, the dispute concerns the `amount of loss' and that issue is determined in accordance with the appraisal clause." 204 S.W.3d at 903. The Johnson court explained its holding, opining that "[i]f the parties had to first agree on which specific shingles were damaged and approach every disagreement on extent of damage as a causation, coverage or liability issue, either party could defeat the other party's request for appraisal by labeling a disagreement as a coverage dispute." 204 S.W.3d at 903.
Tennessee Courts have also concluded that issues of coverage are not appropriate for the appraisal process. See Merrimack Mut. Ins. Co. v. Batts, 59 S.W.3d at 152 ("An appraiser's authority is limited to the authority granted in the insurance policy or granted in some other express agreement of the parties. The appraisal clause *392 in [the insured's] homeowners policy is limited to determining the `amount of loss'  the monetary value of the property damage. It does not vest the appraisers with the authority to decide questions of coverage and liability. . . .") The Supreme Court of Appeals of West Virginia has held similarly. See Smithson v. United States Fid. & Guar. Co., 186 W.Va. 195, 202, 411 S.E.2d 850, 857 (1991) ("Under an ordinary appraisal clause, the only issue is the amount of the loss. Questions concerning policy defenses or coverage are not addressed in appraisals.").
All jurisdictions, however, are not in agreement as to what issues may be submitted for appraisal. For example, the Supreme Court of Florida held in Johnson v. Nationwide Mutual Insurance Co., 828 So.2d 1021, 1022 (Fla.2002), that "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." A Florida District Court of Appeal has reiterated the Johnson holding, stating that "when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid." Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess & Surplus Lines Ins. Co., 916 So.2d 12, 15 (Fla.Dist.Ct.App.2005).
Having considered the holding of other jurisdictions regarding the scope of an appraiser's rights and duties under an appraisal clause in an insurance policy, we conclude that the more persuasive authority is the authority holding that an appraiser's duty is limited to determining the "amount of loss"  the monetary value of the property damage  and that appraisers are not vested with the authority to decide questions of coverage and liability; we thus adopt that holding as our rule of law. Questions of coverage and liability should be decided only by the courts, not appraisers. This holding is consistent with the longstanding principle that "[t]he court must enforce the insurance policy as written if the terms are unambiguous." Safeway Ins. Co. of Alabama v. Herrera, 912 So.2d 1140, 1143 (Ala.2005). We find no ambiguity in the term "the amount of loss" as used in the appraisal clause in the Rogerses' homeowner's policy that would permit an appraisal to include questions of coverage and liability. Such a conclusion is also consistent with the principle that "[t]he contract shall be construed liberally in favor of the insured and strictly against the insurer." Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996).
Therefore, we hold that the trial court erred in ordering the parties to submit to the appraisal process. Although the parties agreed as to the causation of the damage to the roof, they were not in agreement as to the cause of the damage to the brick veneer or to the foundation. The determination of the causation of these matters is within the exclusive purview of the courts, not the appraisers.

VI. Conclusion
Although State Farm waited until almost 2 years after the Rogerses' house sustained damage as a result of the tornado and 14 months after the Rogerses initiated legal action to invoke the appraisal process, the Rogerses failed to show substantial prejudice from the delayed invocation of the appraisal clause and, therefore, State Farm did not waive its right of appraisal by the delay. However, the trial court committed reversible error by ordering State Farm and the Rogerses to submit to the appraisal process issues that involved causation, which should have been decided by the trial court. Therefore, we *393 reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
SEE and BOLIN, JJ., concur in part and dissent in part.
BOLIN, Justice (concurring in part and dissenting in part).
I agree with the majority opinion that the Rogerses failed to show substantial prejudice from State Farm's delayed invocation of the appraisal clause and that, therefore, State Farm did not waive its right to invoke the appraisal clause by the delay. However, I dissent from the majority's holding that the trial court committed reversible error by ordering State Farm and the Rogerses to submit to the appraisal process those issues that involved causation.
In this case, the Court is not faced with a situation in which the insurer denied coverage. To the contrary, State Farm conceded liability under the policy, but disputed the amount it owed. The purpose of the appraisal was not to determine whether the Rogerses' homeowner's policy covered losses occasioned by a tornado, but rather to establish the amount of loss. This determination, of necessity, involved the question of the applicability of an exclusion for loss caused by preexisting conditions. I do not consider the presence of such an issue to prevent the characterization of determining the amount of loss as a subsidiary issue, as stated in dicta in Casualty Indemnity Exchange v. Yother, 439 So.2d 77 (Ala.1983), when the primary issue of coverage has been conceded. Although I note the existence of contrary authority, I nevertheless find no misapplication of the appraisal clause under the circumstances here presented when the insurer admits liability for the loss and the remaining issues deal with the extent of loss that falls within the admitted coverage.
Florida courts have determined that an appraisal clause is available to resolve disputes over the amount of loss when the insurer admits that the loss is covered. See Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess & Surplus Lines Ins. Co., 916 So.2d 12, 15 (Fla.Dist. Ct.App.2005) (noting that, under Florida Supreme Court precedent, "when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid"). See also Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021, 1022 (Fla.2002) (holding that "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is a covered loss, the amount of which is disputed"). The Johnson court further stated:
"`Very simply, the [State Farm Fire & Cas. Co. v.] Licea [, 685 So.2d 1285 (Fla.1996),] court was saying that when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid. In that circumstance, the appraisers are to inspect the property and sort out how much is to be paid on account of a covered peril. In doing so, they are to exclude payment for "a cause not covered such as normal wear and tear, dry rot, or various other designated, excluded causes."'"
828 So.2d at 1025 (quoting Gonzalez v. State Farm Fire & Cas. Co., 805 So.2d *394 814, 816-17 (Fla.Dist.Ct.App.2000)) (final emphasis added).
I also find persuasive CIGNA Insurance Co. v. Didimoi Property Holdings, N.V., 110 F.Supp.2d 259 (D.Del.2000). In Didimoi, the insurer and the property owner, along with its mortgagee, each sought declarations as to the insurer's obligations in connection with a fire at the property owner's building. The insurance policy covering the building contained an appraisal clause. The parties disagreed on whether determining the "amount of loss" included determining the cause of the loss. The federal district court stated:
"[T]he Court concludes that in the insurance context, an appraiser's assessment of the `amount of loss' necessarily includes a determination of the cause of the loss, as well as the amount it would cost to repair that which was lost. The Court's conclusion in this regard is consistent with the plain meaning of the terms `amount of loss' and `loss' in the insurance context. For example, Black's Law Dictionary defines the term `amount of loss' as `the diminution, destruction, or defeat of the value of, or of the charge upon, the insured subject to the assured, by the direct consequence of the operation of the risk insured against, according to its value in the policy, or in contribution for loss, so far as its value is covered by the insurance.' Black's Law Dictionary, supra at 83 [(6th ed.1990)] (emphasis added). Thus, the definition provided by Black's expressly includes a causation element.
"Although Webster's Dictionary does not define the phrase `amount of loss,' Webster's definition of the word `loss' is consistent with the definition of `amount of loss' in Black's. In the context of insurance, Webster's Dictionary defines `loss' as `the amount of an insured's financial detriment by death or damage that the insurer becomes liable for.' Webster's Collegiate Dictionary 706 (9th ed.1988) (emphasis added). As a general matter, without regard to specific legal exceptions created in a policy, an insurer is only liable for damage caused by the risk insured against. Thus, in the Court's view, the Webster's definition of `loss' for purposes of insurance expressly contemplates causation."
110 F.Supp.2d at 264-65. The federal district court went on to address caselaw cited by both parties. The federal court was presented with dicta from Delaware courts and a mix of authority from other jurisdictions. The federal court stated:
"Given the lack of Delaware authority on this point and the mix of persuasive authority from other jurisdictions, the Court is hesitant to make a sweeping statement aligning itself with one or another camp. This having been said, the Court believes that under the circumstances of this case, including the plain language of the policy, a determination of amount of loss under the appraisal clause includes a determination of causation. Coverage questions, such as whether damage is excluded for reasons beyond fire damage, are legal questions for the Court as this case progresses. However, the Court believes that whether a particular item was damaged as a result of fire or firefighting efforts is appropriately reserved for the appraisal process.
"Indeed, under the circumstances of this case, the Court cannot reconcile any other approach. Carried to its logical conclusion, [the property owner and mortgagee's] position would be nonsensical. If the appraisers were required to accept the insured's claimed damages regardless of their cause and assign only dollar value assessments of the cost to repair or replace the items of claimed *395 damage, the appraisers could be examining damage entirely unrelated to this case. For example, the insured could claim damage that resulted from an office party months ago and the appraisers would be required to assess a repair or replacement cost for that damage, when clearly such damage was not caused by the fire and would not be remotely relevant to this dispute. The Court cannot conclude that this is the appropriate function of the appraisal process.
". . . .
"As a general matter, public policy favors alternate resolution procedures like the appraisal process. See generally Devaney v. Nationwide Mutual Insurance Company, 679 A.2d 71, 75 (Del. 1996); [15] Couch [on Insurance], at § 209:17. If the Court were to curtail the appraisers authority to include only dollar value assessments without regard for whether the property was damaged as a result of the fire, the Court would be reserving a plethora of detailed damage assessments for judicial review, thereby debunking the purpose of appraisal which is to minimize the need for judicial intervention. Couch, supra at § 209:8 ('Like the arbitration remedy, appraisal is designed to be consistent with the public policy of discouraging litigation.'). Moreover, the Court believes that its approach to the appraisal process may foster the parties' resolution of certain issues without legal intervention, thereby promoting the purpose of appraisal. Id. For example, the appraisal may assist the parties in narrowing and identifying the disputed issues thereby encouraging the parties to attempt a resolution of those matters before seeking the Court's intervention."
110 F.Supp.2d at 268-69.
In the present case, the appraisal process should include a determination whether the claimed damage to the brick veneer and to the foundation was caused by the tornado. Accordingly, I dissent.
SEE, J., concurs.
NOTES
[1] This case was originally assigned to another Justice on this Court; it was reassigned to Chief Justice Cobb on August 24, 2007.
[2] The record does not indicate that the trial court ever ruled on State Farm's motion.
[3] We note that State Farm Lloyds took the opposite position in Johnson from the position of State Farm in the matter currently before this Court. As the Johnson Court observed:

"State Farm argues that it does not have to submit to the appraisal process unless the parties first agree on causation, coverage, and liability. It contends it is not required to submit to an appraisal in this case because whether the hail damaged only the ridgeline of the roof, as State Farm contends, or the entire roof, as Johnson contends, is a causation, coverage, and liability issue not an issue concerning the amount of loss."
204 S.W.3d at 900-01 (footnote omitted).