YATES, Presiding Judge.
Tara Miller, by and through her father and next friend, Robert Miller; and Robert Miller and Winna Miller, individually, sued Archstone Communities Trust (“Archstone”) and Southeastern Sealcoat-ing, Inc. (“Southeastern”), seeking to recover damages for injuries sustained by Tara when she slipped and fell on premises maintained by Archstone. Archstone moved the court for a summary judgment on December 21, 1999. The Millers filed their response to Archstone’s motion on January 26, 2000. Southeastern moved the court for a summary judgment on May 18, 2000. The Millers responded to Southeastern’s motion on May 31, 2000. Following a hearing, the trial court entered a summary judgment in favor of Archstone and Southeastern on June 23, 2000. The Millers appeal following the denial of their postjudgment motion. This case was transferred to this court by the supreme court, pursuant to § 12-2-7, Ala.Code 1975.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that *1101 no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SowthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Tara and her parents, Robert and Win-na, resided at the “Cameron on the Caha-ba” apartment complex in February 1997. Tara was 16 years old at the time. Cameron on the Cahaba is owned by Arch-stone. On May 6, 1996, Archstone entered into a contract with Southeastern whereby Southeastern was to apply a sealant to portions of the apartment complex’s parking lot. Southeastern completed applying the sealant to the parking lot on May 31, 1996. The sealant applied to the parking lot by Southeastern was a mineral-colloid-stabilized emulsified coal tar pavement sealer that was manufactured by Gem Seal, Inc. Gem Seal’s application specifications state:
“10.1. Skid Resistance: Sealcoats, when improperly applied and/or under certain environmental conditions, may become slippery. As with any paint-like coating, repeated applications reduce texture. Skid resistance can be improved with additions of 4 to 6 pounds of sand per gallon. CAUTION MUST BE EXERCISED, particularly when skid resistance is a major safety factor. Gem Seal does not recommend sealcoating asphalt pavements with the following characteristics; main thoroughfares, runways, steep inclines, poor drainage, and vehicles traveling at speeds in excess of 30 mph that are subject to rapid stops or hydroplaning. Gem Seal recommends applying coal tar emulsion to asphalt pavement surfaces only.”
The contract entered into between Arch-stone and Southeastern to apply the sealant specifically provides that “[a]t least 5 lbs. of sand per gallon of coal tar will be added. This is to provide a non-slip surface and add to wearability.”
On February 13, 1997, Tara rode the school bus home from school. She exited the school bus at the entrance to the apartment complex and began walking to her apartment. Tara testified that it was cold and drizzling rain and that the parking lot was wet at the time. As Tara was walking to her apartment, she slipped and fell on a portion of the parking lot that had been sealed by Southeastern. She broke her left leg. Tara described the accident as follows in her deposition:
“I got off the school bus and was — I was about to walk in the grass and then I saw that it was really muddy. So I decided to walk down the driveway and walk down the hill on the concrete on the asphalt. And then the next thing I remember is I slipped and fell. And I tried to get up and I couldn’t get up. My leg hurt too bad.”
The Millers alleged in their complaint that the defendants “negligently and wantonly used materials in paving or applied a sealant or other substance to the paved areas of Cameron on the Cahaba Apartments, causing a dangerous condition to exist, which said dangerous condition proximately caused Plaintiff Tara Miller to slip and fall.” The Millers further alleged that the defendants negligently or wantonly failed to warn of the unreasonably dangerous condition. A tenant of an apart *1102 ment complex has the same legal rights as an invitee, with respect to the common areas of the apartment complex. Shelton v. Boston Fin., Inc., 638 So.2d 824 (Ala.1994). Our supreme court has stated:
“A landowner owes an invitee the legal duty ‘to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation, and to warn the invitee of known dangers, or dangers that ought to have been known, and of which the invitee was ignorant.’ Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, at 62, 173 So. 388 (1937).”
Id., at 825. To recover in a premises-liability action based on a fall, a plaintiff must prove (1) that his fall was caused by a defect or instrumentality located on the premises, (2) that the fall was the result of the defendant’s negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident. Logan v. Winn-Dixie Atlanta, Inc., 594 So.2d 83 (Ala.1992). However, where the plaintiff establishes that the defendant created the dangerous condition, the plaintiff need not introduce evidence indicating that the defendant had actual or constructive notice of the dangerous condition; notice is presumed under such circumstances. Nelson v. Delchamps, Inc., 699 So.2d 1259 (Ala.Civ.App.1997). An owner of the premises is not an insurer of the safety of his invitees and the doctrine of res ipsa loquitur is not applicable. Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala.1997). Further, no presumption of negligence arises out of the mere fact of an injury to the invitee. Id.
Archstone and Southeastern presented the deposition testimony of Tara, Robert, and Winna, as well as the affidavit of J. Lindsay Freeman, an Archstone employee, in support of their motions for summary judgment. Tara testified in her deposition, that before she fell on February 13, 1997, she had walked in the same area of the parking lot on previous occasions after the sealant had been applied and after it had rained, without slipping. She stated that she had never noticed that particular area of the parking lot to be slick after it had rained and that she had never notified anyone that that area of the parking lot was slick. Tara further testified that she had never seen anyone else slip or slide in that area of the parking lot after it had rained. Finally, when asked if she knew what caused her to fall, Tara answered “No.”
Winna testified in her deposition that she had walked in the area of the parking lot where Tara fell, after the sealant had been applied and after it had rained, and that she did not notice any problems with the parking lot. She further testified that she was unaware of any problems regarding the parking lot being reported to Arch-stone before Tara fell. Winna also stated that she was unaware of any procedures or regulations that were violated in applying the sealant to the parking lot. Robert testified in his deposition that he did not know what caused Tara to fall, stating, “All I know is she slipped and fell.” He also testified that he was unaware of any procedures or regulations that were violated in applying the sealant to the parking lot. Freeman, an Archstone employee, testified in his affidavit that no incident reports had been filed indicating that any apartment resident or guest had slipped in the parking lot from the time the sealant was applied until the time Tara fell.
In opposition to the defendants’ motions for summary judgment, the Millers presented the application specifications provided by the sealant manufacturer; a copy of the contract to apply the sealant, entered into between Archstone *1103 and Southeastern; and an affidavit executed by Tara. The Millers point to the application specifications provided by the manufacturer and argue that the application of the sealant creates an unreasonably dangerous condition when improperly applied and/or when it becomes wet from rain. They argue that because the contract between Archstone and Southeastern called for the mixture of sand with the sealant, the defendants had notice of the dangerous condition caused by the sealant when it rains. On the contrary, the addition of the sand to the sealant, as called for by the contract between Archstone and Southeastern, evidences an attempt by the defendants to comply with the manufacturer’s specifications, and to ensure that the sealant was properly applied, so as to reduce the risk of slipping by improving the “skid resistance.” The Millers presented no evidence indicating that the defendants violated any procedure or regulation in applying the sealant to the parking lot. We further note that the Millers presented no evidence indicating that the defendants had notice of the alleged dangerous condition the plaintiffs say were created by the application of the sealant. We conclude that the Millers did not present substantial evidence creating a genuine issue of material fact as to whether an unreasonably dangerous condition existed in the parking lot as the result of the sealant’s being applied and that the defendants had notice of it.
The dissent concludes that because the area where Tara fell was “steeply inclined” and because the manufacturer’s warnings stated that the sealant should not be applied to steep inclines, the Millers presented circumstantial, yet substantial, evidence as to the cause of the slippery condition. The record is replete with evidence indicating that the area where Tara fell was on a hill. However, no evidence in the record indicates to what degree this hill was inclined, much less that this hill was “steeply inclined.” The dissent moves from the fact that Tara fell on a hill, to the assumption that the hill was “steeply inclined.” This is an assumption that should not be made. We note that Tara does testify in her affidavit that the area in which she fell was “steeply graded”; however, for reasons discussed below, Tara’s affidavit may not be relied upon to create a genuine issue of material fact.
Assuming, however, that a dangerous condition did exist in the parking lot and that the defendants had notice of the condition, we conclude that the Millers did not present substantial evidence creating a genuine issue of material fact as to whether the condition caused Tara to slip and fall. As noted above, both Tara and her father specifically testified in their depositions on July 2, 1999, that they did not know what caused Tara to slip and fall in the parking lot. However, Tara testified in her affidavit on May 31, 2000, as follows:
“In 1996, a sealant or coating was applied to the parking lots and roads within the apartment complex.
“On February 13, 1997, I was walking home from the school bus stop to my apartment. Although I usually walk from the bus stop, I walked a different way on that day because I was wearing new shoes and I did not want to get them muddy. I walked across a steeply graded paved area that I had not walked on since before the sealant or coating had been applied. Due to the slippery surface of the pavement, I slipped and fell and broke my leg. There were no apparent physical defects in the surface of the pavement, such as cracks, potholes, or uneven surfaces. There was no debris or other loose material, nor any obstruction that might cause someone to trip. There were no visible liquids on the pavement other than rainwa *1104 ter. I fell solely because of the slippery surface.
“When the parking lot is dry, there is not much difference between how slippery it was before the sealant or coating was applied and how slippery it is since the sealant or coating was applied. When the parking lot is wet, however, there is a profound difference. It is much more slippery when it is wet since the sealant or coating was applied than it was before the sealant or coating was applied. It is much more slippery now when it is wet than ordinary pavement with the same amount of water on it.”
We note that Tara clearly testified in her deposition that she did not know what caused her to fall. Robert also testified in his deposition that he did not know what caused Tara to fall. Tara contradicts this testimony by testifying in her affidavit that she slipped because of the slippery surface caused by the sealant after it had rained. “ ‘When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.’ ” Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376, 380 (Ala.1995), quoting Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir.1984). Therefore, the Millers cannot rely on Tara’s affidavit to create a question of fact as to the cause of Tara’s fall. We conclude that the Millers did not present substantial evidence creating a genuine issue of material fact as to what caused Tara to fall.
Accordingly, the summary judgment entered in favor of Archstone and Southeastern is due to be affirmed.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., dissents.