PER CURIAM.
Alexander Paul Jadick, as administrator ad litem of the estate of Val Jadick (“Jad-ick”), deceased, appeals from a summary judgment of the Mobile Circuit Court in favor of Nationwide Property & Casualty Insurance Co. (“Nationwide”).
In June 2009, Jadick initiated a civil action in the trial court, alleging that Nationwide had breached an insurance policy it had issued to Jadick by failing to comply with an appraisal clause pertaining to disputes between the parties as to the amount of a particular loss and that it had exercised bad faith in doing so. In November 2009, Jadick filed a motion in which he requested an appraisal and the appointment of an umpire. In January 2010, Jad-ick filed a motion to recuse.[1] Both motions were denied. In April 2010, Jadick filed a motion to reconsider, seeking relief from the rulings on both his recusal and appraisal motions, which motion was thereafter denied. Jadick then filed a petition for writ of mandamus regarding the recu-sal issue; this court dismissed that petition on the basis that it was untimely. Ex parte Jadick (No. 2090892).
Nationwide filed a motion for a summary judgment in July 2010, to which Jad-ick responded in opposition. Nationwide thereafter filed a motion to strike an affidavit Jadick had submitted in support of his response in opposition, arguing that it was based on hearsay; that motion was granted. The trial court held a hearing in December 2010, and, at that time, Jadick filed a supplemental response in opposition to the motion for a summary judgment and attached another affidavit. In response, Nationwide filed a motion to strike the second affidavit, arguing that the affidavit was also based on hearsay. Nationwide further argued that Jadick’s supplemental response should be struck from the record because Jadick had failed to file the sup *7 plemental response at least two days before the hearing. See Rule 56(c)(2), Ala. R. Civ. P. The trial court entered a summary judgment in Nationwide’s favor in December 2010, contemporaneously granting Nationwide’s second motion to strike, prompting Jadick’s appeal. Because Jad-ick died during the pendency of this appeal, Alexander Paul Jadick, the administrator ad litem of Jadick’s estate (“the administrator”), has been substituted as a party.
The undisputed facts reveal that Jadick suffered a fire loss at his residence on August 4, 2007. He reported the loss to Nationwide the following day. The present litigation arose out of the events that thereafter transpired. On August 7, 2007, Nationwide conducted a routine inspection of the damaged property; on August 22, 2007, Nationwide provided Jadick with an estimate of the amount of damage sustained by the residence. The cover page for the estimate stated, in pertinent part, as follows:
“If any hidden, or additional damaged items, and/or damaged items are discovered, please contact me or have your contractor or vendor contact me immediately. Coverage for the hidden or additional damages and/or damaged items, would need to be determined, and may require an inspection/re-inspection, before any supplemental payment would be authorized. Please do not destroy, or discard any of the hidden, or additional damages, and/or damaged items, until we have had an opportunity to review the hidden or additional damages and/or damaged items, and have reached an agreement with you on any supplemental cost.”
(Emphasis added.)
On August 28, 2007, Nationwide issued a payment in the amount of $63,072.23, consistent with the estimate, to Jadick (and the lienholder on the house) to cover the loss; the letter attached to that payment indicated that payment for overhead and profit would be paid once Jadick hired a qualified general contractor to repair the residence and stated that, with payment for overhead and profit, Jadick would receive a total of approximately $76,004.59.
In October 2007, Jadick entered into a contract with Robert Mullen Builders, Inc. (“Mullen Builders”), to make the needed repairs for $78,000. In December 2007, Nationwide sent a letter to Jadick telling him to contact its employee immediately if any hidden or additional costs were discovered during the repair process. The language of that letter included the language that had been included in the letter attached to the first payment (quoted above). In January 2008, Mullen Builders sent a letter to Jadick demanding to be paid in full at that time, including payment of an additional $1,448.23 to cover county-inspection fees. After receiving the bill from Jadick, Nationwide issued payment in the amounts requested, thereby paying off the remaining balance owed to Mullen Builders.
The appraisal clause of Jadick’s insurance policy with Nationwide stated:
“If you and we fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser’s identity within twenty days of the receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, you or we can ask a judge of a court of record in the county where the resident premises is located to select a competent, impartial umpire.”
*8 In April 2009, 15 months after Mullen Builders had completed its repairs and had been paid in full, Jadick obtained an estimate from Hargrove & Company, LLC (“Hargrove”), regarding damage caused by the fire, which estimate was higher than the first estimate Nationwide had submitted to Jadick. Jadick wrote Nationwide a letter demanding that it conduct an appraisal and attached the estimate obtained from Hargrove to that letter. The record shows that that demand letter was the first time Jadick had informed Nationwide that he did not agree with the original estimate and with the payment paid to Mullen Builders. Nationwide refused to conduct an appraisal, positing that Jadick had not taken the necessary steps to invoke the appraisal clause in the policy, including demonstrating that a disagreement existed between the parties as to the first estimate.
After Nationwide denied Jadick’s request that it conduct an appraisal, Jadick commenced the underlying action. After Jadick filed his motion in the trial court seeking to invoke the appraisal clause and to appoint an umpire, Nationwide filed a response in opposition to Jadick’s motion, asserting 1) that it had told and encouraged Jadick at least twice to notify it immediately if any hidden or additional defects became apparent warranting increased repair costs and 2) that Jadick had not only failed to provide, but had also conceded that he did not have, a basis upon which to disagree with the original estimate and to invoke the appraisal clause. In support of its assertion that Jadick had no basis on which to disagree with the original estimate, Nationwide referenced Jadick’s response to a discovery request; in response to Nationwide’s request that Jadick “state in detail all damages” that he was claiming and that he “produce any and all documents which substantiate such damages,” Jadick had conceded that he “need[ed] the appraisal to occur to get the accurate figures of damages.”
As we have noted, after the trial court denied Jadick’s motion to invoke the appraisal clause and to appoint an umpire and his motion for recusal, Nationwide sought a summary judgment in its favor. Responding in opposition, Jadick argued that the amount Nationwide had agreed to pay pursuant to the first estimate had prohibited Mullen Builders from making some repairs and using some materials. In support of that argument, Jadick attached an affidavit of Robert Mullen (“Mullen”), the proprietor of Mullen Builders, in which he stated that he had replaced only a section of the roof instead of replacing the entire roof; that he had installed carpet instead of repairing the hardwood floors that had existed in the house before the fire; and that, “based on the insurance company’s disallowance of certain items, Jadick was forced to decide how best to allocate the funds that were allowed by the insurance company.” The record reveals no evidence of a disagreement or of any coverage issues that had arisen out of the first estimate, nor does it reveal that Nationwide refused to pay for anything before Mullen Builders commenced repairing the property. Nationwide filed a motion to strike Mullen’s affidavit, and that motion was granted. On the day of the hearing set for arguments on Nationwide’s summary-judgment motion, Jadick filed a supplemental response in opposition to the summary-judgment motion and attached a second affidavit from Mullen. Nationwide argued that that supplemental response and Mullen’s affidavit should be struck from the record because Mullen’s statements were hearsay and because the supplemental response was untimely because it was filed on the day of the hearing. See Rule 56(c)(2), Ala. *9 R. Civ. P. In entering the summary judgment in favor of Nationwide, the trial court also granted Nationwide’s second motion to strike.
On appeal, the administrator argues 1) that the trial court erred in denying the motion to recuse; 2) that the trial court erred in denying the motion to invoke the appraisal clause and to appoint an umpire and in concluding that Nationwide did not breach its policy as a matter of law; and 3) that the trial court erred in striking the affidavit of Mullen attached to the supplemental response to Nationwide’s summary-judgment motion.
We begin by addressing the motion to recuse. Nationwide argues that the motion to recuse was properly denied, and it asserts that the trial court’s decision cannot properly be reviewed on the merits because of our previous dismissal of Jad-ick’s petition for writ of mandamus. Although not explicitly stated, Nationwide’s argument appears to be based on the doctrine of res judicata. However, “[a]n issue or action is barred by the doctrine of res judicata when a court of competent jurisdiction has rendered a judgment on the merits in an earlier action that involved substantially identical parties and that presented the same cause of action.” City of Dothan Pers. Bd. v. DeVane, 860 So.2d 881, 883 (Ala.Civ.App.2002) (emphasis added; citing Parmater v. Amcord, Inc., 699 So.2d 1238, 1240 (Ala.1997)). Specifically, Alabama courts have recognized that
“ ‘the denial [of a petition for a writ of mandamus] does not operate as a binding decision on the merits.’ R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala. 1994). ‘[T]he denial of relief by mandamus does not have res judicata effect.’ Cutler v. Orkin Exterminating Co., 770 So.2d 67, 69 (Ala.2000); Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala.1999); Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 (Ala.1999).”
Ex parte Shelton, 814 So.2d 251, 255 (Ala. 2001). Further, even if the law as expressed in Shelton were not the law, Nationwide’s argument would fail given the facts of this case; because we dismissed Jadick’s petition for writ of mandamus on procedural grounds (untimeliness), we did not review the trial court’s decision on the merits, and, therefore, our dismissal had no res judicata effect.
In addressing the merits of the trial court’s denial of the motion to recuse, however, we conclude that the administrator’s arguments do not warrant reversal of the trial court’s decision. The applicable standard of review as to a ruling on a motion to recuse is well established:
“ ‘A trial judge’s ruling on a motion to recuse is reviewed to determine whether the judge exceeded his or her discretion. See Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala.2003). The necessity for recusal is evaluated by the “totality of the facts” and circumstances in each case. [Ex parte City of ] Dothan Pers. Bd., 831 So.2d [1,] 2 [(Ala. 2002)]. The test is whether ‘“facts are shown which make it reasonable for members of the public, or a party, or counsel opposed to question the impartiality of the judge.’ ” In re Sheffield, 465 So.2d 350, 355-56 (Ala.1984) (quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982)).’ ”
Ex parte Parr, 20 So.3d 1266, 1269 (Ala. 2009) (quoting Ex parte George, 962 So.2d 789, 791 (Ala.2006)). In support of why he believes the trial judge should have re-cused himself, the administrator argues that the trial judge improperly assumed that Nationwide had objected to Mullen’s second affidavit on the basis of Jadick’s failure to comply with Rule 56(c)(2) before Nationwide had actually objected on such *10 grounds; that the trial judge referenced Jadick’s “actions during the claims adjustment process” as evidence indicating that Nationwide had a “reasonable and legitimate basis” to deny Jadick’s request for an appraisal but failed to cite contractual language to support that ..conclusion; that Jadick’s delay in seeking an appraisal is “mighty similar” to the delay in Rogers v. State Farm Fire & Casualty Co., 984 So.2d 382 (Ala.2007); that the summary-judgment order did not cite any contractual language prohibiting Jadick’s request for an appraisal; that the trial judge’s conclusion that the “unsworn” estimate from Hargrove was not enough to require an appraisal is unsupported by caselaw and “contrary to decades of appraisal history”; that the trial judge “illegally denied [Jadick] his right to contract and right to a jury trial” under the United States Constitution; that another judgment rendered by the trial judge had been reversed in another case involving Jadick; that the trial judge “changed procedural rules claiming his docket controlled over written notice and later claiming the exact opposite”; that the trial judge is not credible in the administrator’s opinion; and that the trial judge made false allegations against Jad-ick, including an allegation that Jadick had attempted to extort him.
Reduced to their essence, those arguments urge us to require recusal merely for allegedly committing errors in ruling on the case. However, recusal is not a remedy to be sought merely when a judgment is not in one’s favor, nor is review of a motion to recuse a vehicle for seeking review of the trial court’s judgment; moreover, a judgment adverse to the movant does not imply the existence of the trial judge’s personal prejudice or bias. See Curvin v. Curvin, 6 So.3d 1165,1170-71 (Ala.Civ.App.2008) (holding that the mere possibility that a trial judge is biased is insufficient to warrant recusal; “specific instances demonstrating bias or prejudice on the part of the trial court” must be shown). Additionally, the arguments alleging that the trial judge was biased against Jadick have no factual basis. Not only are the administrator’s arguments unaccompanied by factual evidence, but the arguments are difficult, if not impossible, to follow. Moreover, the administrator cites no caselaw requiring a trial judge to recuse himself for any of the reasons that, he argues, warrant recusal here. As we have iterated many times, “[a]n appellant is required, when making an argument, to cite legal authority in support of that argument.” Franklin v. Woodmere at the Lake, 89 So.3d 144,151 (Ala.Civ.App.2011); see also Rule 28(a)(10), Ala. R.App. P., and University of South Alabama v. Progressive Ins. Co., 904 So.2d 1242, 1247-48 (Ala. 2004). Because the administrator has not demonstrated that the trial judge acted outside his discretion in denying the motion to recuse, we conclude that the trial court’s decision was proper.
Next, we address whether the trial court erred in denying the motion to invoke the appraisal clause and to appoint an umpire and in concluding that Nationwide had not breached its insurance policy as a matter of law.[2] 'At the outset, we reject Nationwide’s argument that the appeal of the trial court’s decision not to invoke the appraisal clause of the insurance policy is untimely because Jadick did not file a petition for a writ of mandamus within 42 days of the trial court’s denial of his motion. Nationwide’s argument assumes that Jadick was required to have filed a petition for a writ of mandamus as to the trial court’s denial of his motion to invoke the appraisal clause. However, it is *11 only when an appeal will not provide a remedy adequate to prevent undue injury that a writ of mandamus will lie (for example, to require a trial court to comply with the mandate of an appellate court). See Ex parte Insurance Co. of North America, 523 So.2d 1064 (Ala.1988), and Environmental Waste Control, Inc. v. Browning-Ferris Indus., Inc., 711 So.2d 912, 913 (Ala.1997). Here, Jadick was not required to have sought the drastic remedy of mandamus as to the trial court’s denial of his motion to invoke the appraisal clause because, on appeal from a final judgment, an appellant may seek review of any order of the trial court in the case. See Rule 4(a), Ala. R.App. P. We thus turn to the merits of the contentions presented as to the breach-of-contract claim asserted by Jad-ick and whether the trial court erred in determining that the evidence offered by Jadick was insufficient to establish a question of material fact as to Jadick’s claims that Nationwide had engaged in bad faith and fraud.
It is well settled that summary judgment is appropriate when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. Once a party seeking summary judgment makes a prima facie case that there is no genuine issue of material fact, it then becomes the nonmov-ing party’s burden to present “substantial evidence” otherwise. Miller v. Archstone Communities Trust, 797 So.2d 1099, 1100-01 (Ala.Civ.App.2001) (citing Bass v. SouthTrust Bank of Baldwin Cnty., 538 So.2d 794, 798 (AIa.1989)). “Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Miller, 797 So.2d at 1101 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.
1989)). This court is required to construe the record in favor of the nonmoving party and to “resolve all reasonable doubts against the [moving party].” Miller, 797 So.2d at 1101 (citing Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)); see also Ex parte Neese, 819 So.2d 584, 587 (Ala.2001) (quoting Bechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052,1053 (Ala.1986)).
“To establish a breach-of-contract claim, a plaintiff must show “‘(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.” ’ State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 [(Ala.1999)] (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) (citations omitted)).”
Ex parte Coleman, 861 So.2d 1080, 1085 (Ala.2003). At issue in this matter is whether Nationwide demonstrated that there was no genuine issues of material fact as to whether it performed its duties under the insurance policy and that it was, therefore, entitled to a judgment as a matter of law. Nationwide submitted an estimate regarding the loss, which was agreed to by Jadick, even though he had an opportunity to object. Jadick hired a contractor to make the repairs in accordance with that estimate. Nationwide paid the full amount of the estimate, and it even paid additional charges that had been incurred by the contractor.
The administrator argues that Nationwide breached its policy by failing to perform an appraisal when Jadick requested one, 15 months after the damage has already been repaired and after the claim *12 had been paid in full. Nationwide reviewed his request and denied it, explaining that the condition precedent necessary to require that an appraisal be done — that the insurer and the insured party disagree on the amount of the loss — did not exist and, therefore, that the appraisal was unwarranted. Specifically, the administrator asserts (1) that the trial court erred in concluding that Jadick did not present evidence to rebut Nationwide’s claim that a disagreement did not exist so as to warrant invocation of the appraisal clause in the insurance policy; (2) that the trial court incorrectly presumed “without any specific factual allegations” or evidence indicating that, had it performed an appraisal, Nationwide would have been prejudiced by Jadick’s delay in requesting an appraisal; and (3) that Mullen’s second affidavit should not have been struck from the record.
The administrator vehemently asserts throughout his brief on appeal that Nationwide had acknowledged that a disagreement between the parties existed, and, thus, he says, Nationwide’s refusal to perform an appraisal based on its position that a disagreement did not exist demonstrates, by itself, that Nationwide “intentionally]” failed to perform its contractual promise by choosing not to perform an appraisal, thereby demonstrating that summary judgment was not appropriate as to the bad-faith claim; he further asserts that Nationwide’s contention “that the disagreement was brought to [its] attention too late” is a concession that a disagreement existed and, thus, establishes that Nationwide’s refusal to perform the appraisal, which was based on its conclusion that a disagreement did not exist, was a false assertion, an intentional effort to get out of performing the appraisal, and done in bad faith. Furthermore, the administrator argues that Nationwide’s request made in June 2009 that Jadick give it a certain amount of time to name an appraiser before commencing litigation is proof that Nationwide committed fraud by refusing the perform the appraisal based on its conclusion that disagreement between the parties did not exist; the administrator contends that Nationwide’s request demonstrated that it was aware of and had acknowledged that a disagreement existed between the parties before it made the decision not to perform an appraisal. On the other hand, Nationwide asserts that it did not breach the insurance policy, asserting that Jadick did not properly seek to invoke the appraisal clause of the insurance policy because he waited until 15 months after the claim had already been paid out in full and repairs had been completed to seek an appraisal.
We reject the administrator’s arguments that Nationwide’s acknowledgment that a disagreement existed between the parties after Jadick sought to invoke the appraisal clause establishes that Nationwide’s denial of his appraisal request based on its conclusion that no disagreement had existed was asserted in bad faith or fraudulently. The administrator’s arguments are asserted without context, fail to appreciate the term “disagreement” as it is applied in the contractual language of the insurance policy, and ignore the preliminary issue to be resolved regarding Jadick’s request for an appraisal — whether by his delay in requesting the appraisal Jadick had waived his right to an appraisal. A clear reading of the trial court’s judgment, the briefs of both parties, and the record establishes that the parties do not dispute that a disagreement arose at the moment Jadick first sought to invoke the appraisal clause in the policy. No one has denied that a disagreement existed once Jadick sought to invoke the appraisal clause; however, the terms of a contract must be interpreted with respect to the context of the con *13 tract. In this ease, the term “disagreement” does not connote a general sense of being at odds with another party. Similarly, the point the trial court sought to make in concluding that there was no disagreement is that, when the first estimate was submitted to Jadick by Nationwide, at that time or immediately thereafter, Jadick bore the burden of contacting Nationwide if he believed the estimate would not be adequate to cover all the necessary repairs.
The terms of the policy, as reflected in the cover page for the estimate, provided that Jadick was obligated to notify Nationwide “immediately” if he or Mullen Builders believed that additional coverage was necessary to perform the repairs. Not only did the terms of the policy require Jadick or Mullen Builders to contact Nationwide, but the cover page reflecting the terms of the policy further provided that “[c]overage for the hidden or additional damages and/or damaged items, would need to be determined, and may require an inspection/re-inspection, before any supplemental payment would be authorized.” It further requested that Jadick and Mullen Builders not “destroy, or discard any of the hidden, or additional damages, and/or damaged items, until we have had an opportunity to review the ... damaged items, and have reached an agreement with you on any supplemental cost” (emphasis added). The policy also provided that if Jadick and Nationwide were unable to reach an agreement on coverage, Jadick had the right to request an appraisal. Jadick, however, never objected in any way to Nationwide’s estimate. Jadick never indicated to Nationwide that he disagreed with the estimate provided by Nationwide until 15 months after the repairs had been made and after the claim had been paid in full. Thus, the issue is more narrow than the administrator contends: the question is not whether any disagreement exists but whether a disagreement was manifested so as to warrant invocation of the appraisal clause of the insurance policy or, in the alternative, whether Jadick’s waiting until after the repairs had been made and after the claim had been paid in full to express any discontent whatsoever with the amount of the loss assessed by Nationwide constituted a waiver of his right to seek an appraisal of the damage.
Each party argues that Rogers v. State Farm Fire & Casualty Co., 984 So.2d 382 (Ala.2007), supports its arguments as to whether Jadick waived his right to seek an appraisal. In Rogers, the insured party filed a claim relating to damage caused by a tornado, claiming that his house was a total loss. The insurer disagreed. After each party had had an engineer inspect the property, the insurer asked (via letter) the insured party to have the damaged property appraised by a third party; the insured party did not respond, so the insurer sent another letter with payment for the damage it had agreed to cover. Shortly thereafter, the insured party declined to initiate appraisal proceedings and, once again, requested that the insurer pay him an amount to cover the total loss of his house; the insurer again asked him to seek an appraisal. Approximately five months later, the insured party filed a breach-of-contract and bad-faith-refusal-to-pay action against the insurer. More than one year later, the insurer asked the insured party to settle the dispute pursuant the terms of the policy. A little over two months later, the insurer sought a partial summary judgment as to the bad-faith claim and moved for the appointment of an appraiser and/or an umpire.
The trial court in Rogers denied the insurer’s motion on the ground that the insurer had waived its right to invoke the appraisal clause of the insurance policy. *14 On appeal, the supreme court reversed the trial court’s judgment, holding that the insurer had not waived its right to invoke the appraisal clause because the insured party had not “carried their heavy burden of showing substantial prejudice from [the insurer’s] delayed invocation of the appraisal clause.” Rogers, 984 So.2d at 388. The only evidence that the insured party had presented to establish that he would be prejudiced by the insurer’s invocation of the appraisal clause was that he had spent a large amount of money on the litigation during the more-than-one-year period between the filing of the lawsuit and the insurer’s invocation of the appraisal clause. The insurer, on the other hand, had argued that it was due a partial summary judgment because it had already tendered a check for the portion it had agreed to pay. Additionally, the insured party had not demonstrated that the large amount of money that he claimed to have spent on litigation had been expended exclusively for purposes of litigating the bad-faith claim, and was not in any way related to the breach-of-contract claim.
In his brief, the administrator argues solely that the facts of Rogers parallel the facts presented in this case and that Nationwide “has utterly failed to produce the evidence to meet its ‘heavy burden.’ ” We reject this argument. The evidence presented to the trial court was sufficient to support the trial court’s judgment that there was no genuine issue of material fact as to whether Jadick waived his right to seek an appraisal and that, therefore, Nationwide was entitled to a judgment as a matter of law. When property is appraised for the purpose of resolving insurance-coverage issues, it is imperative that the appraiser be able to evaluate the extent of the damage done to that property. By the time that Jadick sought to invoke his right to an appraisal, the damage had been repaired and, thus, the extent of that damage could not have been evaluated. Furthermore, the facts show that Jadick was familiar with the process for bringing coverage issues to Nationwide’s attention. Jadick was given written instructions explaining his need to bring coverage issues to Nationwide’s attention, as well as the need to preserve the damage, so that Nationwide could inspect the property and determine how to resolve the issues. Also, in January 2008, Jadick asked for additional money to be paid to Mullen Builders for certain unexpected expenses, and Nationwide agreed to pay those additional expenses; even that late into the repair process, Jadick still had not objected on any other grounds to the amount that Nationwide had stated it would pay. The vague basis of Jadick’s request for an appraisal is suspect, as well. Discovery documents show that Jadick conceded that he could not identify the additional damaged areas and/or items that the original estimate had not contemplated.
Lastly, the administrator argues that the trial court erred in striking Mullen’s second affidavit. Mullen’s first affidavit was filed in October 2010, and a supplemental affidavit, following the trial court’s grant of Nationwide’s motion to strike the first affidavit, was filed in December 2010 on the day the hearing was held on Nationwide’s motion for a summary judgment. The administrator argues that any deficiencies in the first affidavit were corrected in the second affidavit. Nationwide argues that the first affidavit was correctly struck from the record because Mullen’s statements were not based on personal knowledge or facts. Nationwide further argues that the second affidavit was filed the day of the hearing and was, therefore, properly struck because it was filed less than two days before the summary-judgment hearing. See Rule *15 56(c)(2). Assuming, without deciding, that the trial court erred in striking the affidavit, any error would have been harmless error. The affidavit merely substantiated Jadick’s contention that the original estimate given by Nationwide was, as the administrator asserts, an insufficient amount to fully repair the damage. However, it is Jadick’s own delay in seeking to invoke the appraisal clause of the policy that was fatal to his claim. The affidavit does not in any way assist Jadick in overcoming the fact that his delay in objecting to Nationwide’s original estimate amounted to a waiver of his right to seek an appraisal. In fact, Mullen’s statements, if accepted as true, make it all the more inexcusable and unreasonable that Jadick did not object to Nationwide’s estimate before or, at least, during the time when Mullen Builders was repairing the damages.
Based on the foregoing, we hold that waiting until 15 months after an insurance claim has been paid in full and after the damaged property has been repaired to seek an appraisal of the damaged property is so prejudicial to the insurer that it amounts to a waiver of the insured party’s right to an appraisal.
For the reasons stated above, the summary judgment entered in favor of Nationwide is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. It is apparent from the record that Jadick wrote the trial judge an ex parte letter urging the trial judge to recuse himself from the matter. The trial court attached a copy of the ex parte letter that Jadick had submitted to the court to its order denying Jadick’s motion to recuse. Referencing that letter, the trial court explained that the ex parte communication engaged in by Jadick had been inappropriate and unethical.

. We also address Jadick's bad-faith claim and his allegations of fraud.